**UNITED STATES of America, Plaintiff–Appellant,**

v.

**James David BOSSE, Defendant–Appellee.**

No. 88–1185.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 12, 1989.

Memorandum Filed August 10, 1989.

Memorandum Withdrawn March 19, 1990.

Decided March 26, 1990.

As Amended on Denial of Rehearing June 15, 1990.

Joel R. Levin, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellant.

Geoffrey T. Carr, Rockhill, Schaiman and Carr, Redwood City, Cal., for defendant-appellee.

Before BROWNING, BEEZER and KOZINSKI, Circuit Judges.

PER CURIAM:

A jury convicted Bosse of unlawfully possessing a sawed-off shotgun in violation of 26 U.S.C. § 5861(d). Bosse moved for a new trial and to suppress the shotgun after newly discovered evidence revealed an earlier illegal entry may have tainted the warrant that authorized the search that disclosed the shotgun. The district court agreed and set aside the judgment, granted the motion for a new trial and granted the motion to suppress. We vacate the suppression order and remand for further findings.

## I.

Bosse was licensed as a semiautomatic firearms dealer and had an application pending for a state license to buy and sell automatic machine guns. On September 25, 1987, Robert Dunkin, an agent of the California Department of Justice, inspected Bosse's home and surrounding premises with Bosse's consent as part of the license application process. Alcohol, Tobacco and Firearms (ATF) Agent Mark Rusin accompanied Dunkin on the search without identifying himself as an ATF agent. On October 3, 1985, ATF agent Robert Griego sought and obtained a search warrant for Bosse's home. After a hearing, the district court found the purpose of Rusin's initial entry was to observe things of interest to ATF and the federal government and Rusin deliberately failed to disclose his identity to Bosse.

## II.

■ An officer may, consistent with the fourth amendment, conceal his or her identity to obtain an invitation to enter a suspect's home. *Lewis v. United States*, 385 U.S. 206, 211, 87 S.Ct. 424, 427, 17 L.Ed.2d 312 (1966); *United States v. Glassel*, 488 F.2d 143, 145 (9th Cir.1973). The undercover entry must be limited to the purposes contemplated by the suspect. Once inside the suspect's home, the agent may not "conduct a general search for incriminating materials." *Lewis*, 385 U.S. at 211, 87 S.Ct. at 427.

■ Special limitations apply when a government agent obtains entry by misrepresenting the scope, nature or purpose of a government investigation. "[A]ccess gained by a government agent, known to be such by the person with whom the agent is dealing, violates the fourth amendment's bar against unreasonable searches and seizures if such entry was acquired by affirmative or deliberate misrepresentation of the nature of the government's investigation." *United States v. Little*, 753 F.2d 1420, 1438 (9th Cir.1984). As the Fifth Circuit Court of Appeals said in *SEC v. ESM Government Securities, Inc.*, 645 F.2d 310, 316 (5th Cir.1981):

> When a government agent presents himself to a private individual, and seeks that individual's cooperation based on his status as a government agent, the individual should be able to rely on the agent's representations. We think it clearly improper for a government agent to gain access to records which would otherwise be unavailable to him by invoking the private individual's trust in his government, only to betray that trust.

■ A ruse entry when the suspect is informed that the person seeking entry is a government agent but is misinformed as to the purpose for which the agent seeks entry cannot be justified by consent. *United States v. Phillips*, 497 F.2d 1131, 1135 n. 4 (9th Cir.1974). Thus we have disapproved the entry of federal narcotics agents accomplished with the assistance of local law enforcement officers who knocked on the suspect's door and asked permission to investigate a fictitious robbery. "The occupants were led to believe that they were admitting officers to investigate a burglary when, in fact, the officers and agents were entering to arrest Phillips." *Id.* at 1135.

■ It is undisputed Rusin accompanied Dunkin not for the purpose of assisting in the state licensing inspection, but rather to further Rusin's investigation into possible federal firearms violations. Rusin himself testified at the suppression hearing he accompanied Dunkin in his capacity as a federal agent and prepared diagrams of the layout of Bosse's house in preparation for obtaining and executing a search warrant. The court found the purpose of the surreptitious entry was to "observ[e] things in which the federal government, through the BATF, had an interest." Dunkin identified himself to Bosse as a state agent conducting an inspection in connection with Bosse's pending license application. Dunkin explained to Bosse that Rusin "is with me." Bosse then allowed the inspection to proceed. In these circumstances, Rusin's silence amounted to a deliberate representation that his purpose was that announced by Dunkin, and a deliberate misrepresentation of his true purpose. Thus, under *Phillips* and *Little*, Rusin's surreptitious entry into Bosse's home was illegal.[1]

The government argues *United States v. Allen*, 675 F.2d 1373 (9th Cir.1980), requires the opposite result. In *Allen*, a federal customs officer, investigating a suspected drug importation scheme, accompanied officers of the Bureau of Land Management who were visiting the defendant's ranch for the purpose of obtaining a public easement across the ranch to federal lands beyond. The court held the agent's entry was unobjectionable. "The other officers had a right to enter ... and Gano [the customs agent] did not violate the

---

**1.** The record also suggests an alternative ground for concluding Rusin's search was illegal. Bosse testified Rusin searched unattended for about fifteen minutes while Dunkin engaged Bosse in conversation. If the intrusion exceed-

ed the scope of the consent it cannot be so justified. The evidence is conflicting with respect to Dunkin's and Rusin's conduct, however, and the court below made no explicit findings on the issue.

fourth amendment by concealing his identity as a Customs Bureau official." *Id.* at 1382.

*Allen* is best understood as involving concealment by Gano of the fact that he was a government agent, a permissible deception, rather than as involving misrepresentation by a known government agent of his purpose for seeking entry. In concluding Gano's entry was legal, the court cited only to *Lewis* and *Glassel,* two cases authorizing undercover agents posing as drug purchasers to enter a suspected drug seller's home when invited to complete a drug transaction. Nothing in *Allen* suggests the court considered Gano's failure to disclose his purpose. *Phillips,* decided six years before, is not discussed; and we are constrained to interpret *Allen* as consistent with *Phillips.* Further, *Little,* decided several years after *Allen,* articulates a rule for this Circuit clearly prohibiting deliberate misrepresentation of the purpose of a government investigation. The *Little* court did not understand *Allen* to cast doubt on this rule, and neither do we.

### III.

■ Our conclusion that Rusin's September 25 entry violated Bosse's fourth amendment rights does not end the inquiry. Suppression of the shotgun discovered during the subsequent warrant-authorized search is appropriate only if the illegal entry tainted the warrant. If the warrant arose from a source entirely independent of the prior illegal search, the shotgun is not properly suppressed. *See Murray v. United States,* 487 U.S. 533, 108 S.Ct. 2529, 2533, 101 L.Ed.2d 472 (1988).

At the hearing on Bosse's motion for a new trial, the district court said: "I find it hard to believe that the product of that surreptitious entry was not in some way productive of some advantage at a later

stage of the case." In granting Bosse's suppression motion, the court found Rusin's search "was a part of the search warrant process," and that Rusin's concealment of his search from the magistrate "raise[d] doubts in the mind of the court about the propriety of the [search warrant] affidavit." These findings are insufficient to support a conclusion that Rusin's illegal entry tainted the subsequent discovery of Bosse's sawed-off shotgun. As the Court said in *Murray,* 108 S.Ct. at 2535–36 (footnote omitted):

> The ultimate question ... is whether the search pursuant to warrant was in fact a genuinely independent source of the ... evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant.[2]

In view of the district court's inconclusive findings with respect to the effect of Rusin's illegal entry and search on Griego's decision to seek the warrant, we remand to the district court for further findings on the motion to suppress.[3] If on remand the motion to suppress is denied, the district court should consider whether to vacate its order granting a new trial.

### IV.

On remand, the court may also consider Bosse's alternative argument that if deliberate misstatements are redacted from the affidavit and deliberate omissions included, probable cause is lacking. *See Franks v. Delaware,* 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684–85, 57 L.Ed.2d 667 (1978). Because the court below made no findings as

---

**2.** No reference to Rusin's entry was included in the affidavit supporting the warrant application.

**3.** We cannot affirm on the alternative ground relied upon below, that when Rusin's testimony as to what he observed in his illegal search (i.e., that he saw no illegal firearms in Bosse's home) is added to the affidavit, probable cause is lacking to support a search of Bosse's home, as opposed to his gun storage shed. The court's conclusion depends on accepting Rusin's testi-

mony that he observed no illegal firearms in Bosse's home, yet the court explicitly rejected Rusin's version of his activities. Furthermore, the warrant authorized a search not only for illegal weapons, but for documents relating to any illegal transactions in firearms. The warrant therefore permitted a search of Bosse's home, which also served as Bosse's office, whether or not Rusin in fact observed any illegal firearms in the home.

to whether misstatements in Griego's affidavit, independent of Rusin's surreptitious entry, were deliberate, the issue is not properly before us.[4]

The district court's order suppressing the evidence is VACATED and REMANDED.

---

**4.** We also leave for consideration by the district court the government's argument that the court lacks jurisdiction to consider this issue because it was not raised in a timely motion to suppress or in the motion for a new trial.