942 F.2d 795
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mark Henry NICHOLSON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leroy Harold RALEIGH, Defendant-Appellant.
 Nos. 90-30447, 90-30448.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 9, 1991.*
Decided Aug. 15, 1991.
 
 Before GOODWIN, ALARCON and CYNTHIA HOLCOMB HALL, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Mark Nicholson and Leroy Raleigh ("appellants") appeal their convictions following their entry of conditional guilty pleas on single counts of manufacturing marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c). The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We affirm.
 
 
 3
 * Appellants first argue that Nicholson's consent to enter his residence was invalid because of his extreme intoxication. The district court found "that in spite of what [Nicholson] ingested," the presence of the deputies in his house was "exactly what he wanted." Bearing in mind the district court's superior position to judge the credibility and reliability of witnesses, see United States v. Castillo, 866 F.2d 1071, 1082 (9th Cir.1988), we conclude that this finding was not clearly erroneous. The fact that Nicholson specifically and emphatically denied the deputies access to the locked two-story room at the rear of the house, and provided coherent reasons for doing so, strongly suggests that he had a "reasonable appreciation of the nature and significance of his actions," United States v. Rambo, 789 F.2d 1289, 1297 (8th Cir.1986) (quoting United States v. Elrod, 441 F.2d 353, 355 (5th Cir.1971)), and was therefore capable of consenting to the deputies' original entry into the residence, see United States v. Gay, 774 F.2d 368, 377 (10th Cir.1985) (fact that defendant allowed police access to one part of a vehicle but not another is an important factor in assessing whether defendant's consent was valid notwithstanding intoxication).
 
 
 4
 Appellants next allege that "[t]he deputies knowingly incited and manipulated [Nicholson's] drug-induced fear, in order to coerce his consent for their entry and search of his home." They cite to no evidence, however, to support their claim of coercion. Indeed, none of the factors we employ to determine whether consent to search was voluntary, see Castillo, 866 F.2d at 1082, such as whether the defendant was in custody or whether the police had their guns drawn, are even implicated by the facts of this case.
 
 
 5
 Appellants' third argument is that any consent granted was vitiated by the deputies' alleged misrepresentation as to the purpose of their entry. Having reviewed the record, we conclude that entry to Nicholson's residence was not obtained through "deliberate misrepresentation of [the deputies'] true purpose," United States v. Bosse, 898 F.2d 113, 115 (9th Cir.1990), and therefore was not an illegal "ruse entry." Both Deputy Hans and Deputy McMurren testified that Nicholson's common law wife, Tina Sharp, told them that the "snipers" were inside the house and expressed concern to them about her safety and those of the other residents. R.T. 5/21/90 at 31, 42. This testimony was uncontradicted. The deputies then "went ahead and offered, in order to appease her, [to] ... make the house clear and safe before she could go ahead and reenter." Id. at 31. The deputies testified that Sharp then sought Nicholson's consent and that Nicholson, after conferring with Sharp, allowed them to enter the house.[1]
 
 
 6
 Deputy Hans testified that the purpose of their entry into the residence "was to go in and ease these people's minds." Id. at 38. He noted that the behavior of the occupants was "very extreme, very jumpy," id. at 32, and that Nicholson had told him that they were armed, id. at 36. Deputy Hans also testified that the deputies, having made two trips to the Nicholson residence, wanted to calm the situation down to avoid a third call from Nicholson. Id. at 38. On cross-examination, Deputy Hans conceded that he was "curious" about possible narcotics activity, id. at 38, and that he did not actually believe that "snipers" were present in the residence, id. at 37, but insisted that his primary purpose in seeking entry was to appease Sharp and to restore calm at the residence.
 
 
 7
 Although the deputies may have had multiple motives for entering the residence, we will not disturb Judge Jones's implicit finding that their primary motive was to put the minds of the occupants at ease. R.T. 5/21/90 at 45-46. In light of the deputies' uncontradicted testimony that Sharp initiated the grounds for the search, and their legitimate interest in public safety and resource conservation, we cannot say that the deputies' stated purpose for entering the Nicholson residence was a deliberate misrepresentation. Cf. Bosse, 898 F.2d at 115 (undisputed evidence that federal agent accompanied state investigator solely for the purpose of obtaining evidence and planning the execution of a search warrant).
 
 
 8
 Appellants' fourth allegation is that the deputies exceeded the scope of Nicholson's consent. We find no error in the district court's rejection of this contention. After denying the deputies access to the locked room, Nicholson did not announce that the search was over, nor did he make any objection to their further search of the residence and its perimeter. By allowing the search to continue, he is deemed to have revoked any prior qualification of the scope of consent. See United States v. Mines, 883 F.2d 801, 804-05 (9th Cir.), cert. denied, 110 S.Ct. 552 (1989); United States v. Rubio, 727 F.2d 727 F.2d 786, 796 (9th Cir.1983); cf. United States v. Dichiarinte, 445 F.2d 126, 128-29 (7th Cir.1971) (by disregarding defendant's express announcement that "[t]he search is over" and continuing to search, government agents exceeded the scope of consent). In any event, the deputies were lawfully outside the door and were allowed to continue their search along the perimeter of the house. Thus, their sensory and olfactory observations of the smell of marijuana and the room's obscured windows did not exceed the scope of consent since they were acquired in "plain view" or "plain smell" of that evidence. See United States v. Curran, 498 F.2d 30, 33 (9th Cir.1974).
 
 II
 
 9
 Nicholson argues that the district court improperly denied his request for a minor role reduction pursuant to § 3B1.2(b) of the Sentencing Guidelines. We find no error. The court's adoption of the presentence report (PSR) constituted a sufficient factual finding that Nicholson was not a minor participant. See United States v. Sanchez-Lopez, 879 F.2d 541, 557 (9th Cir.1989) ("[A] simple statement that the defendant was not a 'minor participant' will suffice as a factual finding.") (internal quotation and citation omitted). Although Raleigh financed the indoor marijuana farm at Nicholson's residence, it was Nicholson who tended and was otherwise responsible for 263 live plants. Nicholson also conceded at the sentencing hearing that he received free rent in exchange for his management of the farm. November R.T. at 6. Nicholson thus had both a significant role in the operation of the farm and a financial stake in its success. This was a sufficient basis for the court's conclusion that he was not a minor participant. See Rexford, 903 F.2d at 1283 (fact that defendant received compensation for his services in the form of lodging and marijuana for his own use suggests that defendant was not minor participant).
 
 
 10
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Nicholson conceded that the deputies talked with Sharp, R.T. 5/21/90 at 24, but denied having given consent to enter the residence. Mindful of the district court's superior position to judge the credibility of witnesses, Castillo, 866 F.2d at 1082, we defer to Judge Jones's finding that Nicholson "did give consent and that he was concerned about the welfare of his home and wanted it checked out." R.T. 5/21/90 at 45