**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Francisco Javier PRECIADO–ROBLES,
Defendant–Appellant.**

**No. 91–50332.**

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 8, 1992 *.

Decided Jan. 21, 1992.

As Amended May 18, 1992.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth

Circuit Rule 34–4 and Fed.R.App.P. 34(a).

James A. Mangione, Mitchell & Mangione, San Diego, Cal., for defendant-appellant.

Cynthia A. Bashant and Patrick K. O'Toole, Asst. U.S. Attys., San Diego, Cal., for plaintiff-appellee.

Before FARRIS, NOONAN, and TROTT, Circuit Judges.

FARRIS, Circuit Judge:

Francisco Javier Preciado–Robles appeals his conviction for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Preciado–Robles argues that the cocaine was illegally seized because: 1) the immigration checkpoint was used to search for

narcotics; and 2) he did not voluntarily consent to the search of his car. We affirm.

On July 19, 1990, United States Border Patrol Agent Pinto was working primary inspection at the Temecula immigration checkpoint. At approximately 4:30 p.m., two hispanic males in a black 1990 Corvette approached Agent Pinto's position. He noticed that the car did not have a front license plate, and was travelling substantially slower than surrounding traffic. Agent Pinto waved the Corvette into secondary inspection.

At the secondary inspection point, Agent Santos approached the Corvette. He asked the driver, Preciado–Robles, where the trip started. Visibly nervous, Preciado–Robles answered "Tijuana." Both Preciado–Robles and his passenger produced immigration documents.

Agent Santos then asked. Preciado–Robles if he could look inside the Corvette. Now shaking, Preciado–Robles consented. Agent Santos began searching car compartments, asking and receiving consent each time. Inside one of the compartments, Agent Santos found a white bag. Preciado–Robles said the bag contained "medicine from Tijuana." Agent Santos looked in the bag and saw a brick-like bundle. Agent Santos arrested both men at this time. The bundle was later determined to be a kilogram of cocaine.

On October 15 and 29, 1990, Preciado–Robles moved to suppress the cocaine on the grounds that the immigration officers had conducted an unlawful search. The district court denied the motion. Upon reconsideration, Preciado–Robles also argued that he had not given his consent voluntarily. On January 3, 1991, the district court denied the petition for rehearing. On January 8th, the district court conducted a trial and found Preciado–Robles guilty. This appeal followed.

## DISCUSSION

### I. *The Secondary Inspection*

▆▆▆ A stop at a permanent immigration checkpoint constitutes a "seizure" within the meaning of the Fourth Amendment. *United States v. Martinez–Fuerte*, 428 U.S. 543, 556, 96 S.Ct. 3074, 3082, 49 L.Ed.2d 1116 (1976). Such a stop is constitutional so long as the scope of the detention is limited to a few brief questions about immigration, the production of immigration documents, and a "visual inspection of the vehicle ... limited to what can be seen without a search." *Id.* at 558, 96 S.Ct. at 3083. The government may refer any vehicle to a secondary area for further immigration questioning "in the absence of any individualized suspicion...." *Id.* at 562, 96 S.Ct. at 3805.

It is undisputed that Agent Pinto had sufficient cause to refer Preciado–Robles' Corvette to the secondary area. Potential immigration violations support a secondary referral. *United States v. Barnett*, 935 F.2d 178, 180–82 (9th Cir.1991). In *Barnett*, we held that a referral to a secondary inspection was proper even in the absence of "articulable suspicion." *Id.*

Preciado–Robles contends that the government acted illegally after Agent Santos reviewed the immigration papers. He asserts that the government may not search for narcotics after valid immigration papers are produced. His argument lacks merit.

Agent Santos asked Preciado–Robles several immigration questions at the secondary station. Preciado–Robles' demeanor during the secondary inspection provided a sufficient basis for pursuing the immigration investigation at the time that Agent Santos requested permission to search the Corvette.

▆▆▆ Further, brief detention following valid immigration questioning is permitted so long as the government can prove "an articulable suspicion or a minimal showing of suspicion." *United States v. Taylor*, 934 F.2d 218, 221 (9th Cir.1991). In *Taylor*, we permitted this minimal intrusion upon individual rights because the defendant had become increasingly nervous throughout the questioning. *Id.* at 221. We caution that there *must* be a valid basis for any additional intrusion, and it must be

of a brief duration, but these requirements were met.

Agent Santos delayed Preciado–Robles for only a short period before requesting permission to search the Corvette. The government has established a valid basis for the delay.

## II. *Consent*

■ Arrests or searches at immigration checkpoints must be justified by either probable cause or consent. *Martinez–Fuerte*, 428 U.S. at 567, 96 S.Ct. at 3087. Whether the district court correctly found that a defendant's consent was voluntary is subject to the clearly erroneous standard of review. *United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir.1988). The government must show that consent was freely given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973).

■ Voluntariness is based on the totality of circumstances. The evidence must be viewed in the light most favorable to the fact-finder's decision. *Castillo*, 866 F.2d at 1082. We have established five factors to consider: 1) whether the defendant was in custody; 2) whether the arresting officer had drawn a gun; 3) whether *Miranda* warnings had been given; 4) whether the defendant was told he had a right not to consent; and 5) whether the defendant was told a search warrant could be obtained. *Id.* "The fact that some of these factors are not established does not automatically mean that consent was not voluntary." *Id.*

■ Agent Santos did not draw his gun, nor threaten Preciado–Robles. He asked permission to "look inside" the Corvette. He specifically asked permission before examining every new compartment of the car. The record establishes that Preciado–Robles consented to each of the requests, a fact he does not deny.

AFFIRMED.