963 F.2d 380
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard DADD, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jorge ESCALANTE-GAMEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Javier GONZALEZ-HERRERA, Defendant-Appellant.
 Nos. 91-10229, 91-10034 and 91-10039.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 13, 1992.
Decided May 21, 1992.
 
 Before WISDOM,* BEEZER and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Jorge Escalante-Gamez, Javier Gonzalez-Herrera, and Richard Dadd (collectively "the appellants"), entered conditional guilty pleas for: conspiracy to import and importation of 3,192 pounds of cocaine, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(1)(B)(ii) (1988); possession with intent to distribute 3,192 pounds of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(a)(ii)(II) (1988); and using and carrying a firearm during and in relation to a drug offense, in violation of 18 U.S.C. § 924(c) (1988). The appellants appeal the district court's denial of their motions to suppress evidence seized in a warrantless search of Dadd's residence. We have jurisdiction over the appellants' timely appeal pursuant to 28 U.S.C. § 1291 (1988). Based on a review of the record, we affirm.
 
 FACTS AND PROCEEDINGS BELOW
 
 3
 At approximately 11:00 p.m. on April 8, 1990, U.S. Border Patrol agents received sensor information indicating an illegal border crossing near Palominas, in southeast Arizona. After three hours of surveillance in the general vicinity of the sensor activity, the agents went to the area where the sensor had gone off. At the fence, the agents observed footprints leading north and south and "brush-out," a tactic used to conceal footprints or vehicle tracks.
 
 
 4
 The agents followed the footprints north to a piece of fenced property located approximately half a mile from the border. Several deserted buildings and a trailer were in the area. The footprints led to the trailer, but did not go to any of the other structures.
 
 
 5
 The agents followed the tracks inside the fence to the trailer. Border Patrol Agent Davila went directly to the trailer, knocked on the door, and identified himself as a Border Patrol Agent. Dadd, the occupant of the trailer, responded that he needed to dress and then he would come out. Shortly thereafter Dadd exited the trailer, opening the door just enough to squeeze himself out.[1]
 
 
 6
 Agent Davila asked for Dadd's consent to search the trailer for illegal aliens and drugs. Dadd consented to allow the agents to search all buildings in the area except for the trailer. Dadd informed the agents a search warrant would be necessary to search the trailer. Dadd then re-entered the trailer. The agents searched the abandoned buildings but found nothing unusual.
 
 
 7
 After the search was concluded, the agents contacted the Border Patrol officer in charge that evening and notified him they were requesting a search warrant and an agent should be sent to start the process. The agents who were already at the trailer waited until the dispatched agent, Border Patrol Agent Samaniego, arrived.
 
 
 8
 After Agent Samaniego reached the trailer, the agents advised him of the situation. Border Patrol Agent Cavazos then went to the trailer door and knocked. Dadd came outside. Agent Cavazos informed Dadd the agents were attempting to obtain a search warrant. Agent Cavazos again sought consent to search the trailer by explaining the footprints led directly to the trailer's front door. Dadd informed the agents a second time that a warrant would be necessary to search the trailer.
 
 
 9
 Agent Cavazos asked Dadd for identification. Dadd entered the trailer and returned with identification. Dadd stated he was cold and was going back inside the trailer. As Agent Cavazos focused his flashlight on Dadd, who was entering the trailer, he saw what appeared to be drug bundles inside the trailer.
 
 
 10
 After Dadd had entered the trailer, the agents told him a search warrant was being sought and nobody would be leaving the property until the warrant was obtained. Without questioning from the agents, Dadd responded that he was thinking about letting the agents come in. A few moments later, Dadd told the agents they could enter the trailer.
 
 
 11
 The agents asked Dadd to exit the trailer. Dadd left the door to the trailer open as he exited, revealing the bundles inside. Dadd stated there were two other people in the trailer. Escalante-Gamez and Gonzalez-Herrera then exited the trailer. All three men were arrested.
 
 
 12
 Subsequent to the arrest, the agents entered the trailer to secure it. When the agents entered, one of the bundles was open on the table, exposing a white powdery substance. The bundles were seized and taken to the Border Patrol Station. Testing revealed the bundles contained cocaine.
 
 
 13
 The appellants were indicted on May 2, 1990. Dadd and Escalante-Gamez filed motions to suppress the cocaine. The district court denied the motions to suppress and a motion to reconsider the ruling. The appellants thereafter entered conditional guilty pleas pursuant to Fed.R.Crim.P. 11(a)(2).
 
 STANDARD OF REVIEW
 
 14
 The evidence presented at the suppression hearing must be viewed in the light most favorable to the government. United States v. Castillo, 866 F.2d 1071, 1082 (9th Cir.1989). A district court's determination that a defendant voluntarily consented to a search depends on the totality of the circumstances and is a question of fact reviewed for clear error. United States v. Preciado-Robles, 954 F.2d 566, 569 (9th Cir.1992).
 
 DISCUSSION
 
 15
 The Fourth Amendment prohibits only unreasonable searches. United States v. White, 766 F.2d 1328, 1330 (9th Cir.1985). Reasonableness is determined under the circumstances of each case. Id. The government bears the burden of demonstrating the reasonableness of the search and of demonstrating the applicability of one of the narrow exceptions to the warrant requirement. United States v. Carbajal, 956 F.2d 924, 930 (9th Cir.1992).
 
 1. ENTRY ONTO PROPERTY
 
 16
 The appellants[2] argue the agents' entry onto the fenced property, even if their intent was to obtain consent to search, constituted an illegal search. They argue the area inside the fence is "curtilage" and is therefore entitled to the same Fourth Amendment protections as the residence itself.
 
 
 17
 The Supreme Court has noted "the Fourth Amendment protects the curtilage of a house and that the extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." United States v. Dunn, 480 U.S. 294, 300 (1987). Factors we examine are "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." Id. at 301.
 
 
 18
 Although unclear, it appears the only structure within the fence was the trailer. Dadd, however, took no precautions to shield the fenced area from the view of anyone passing by, nor has he demonstrated any "private" use of the property beyond ingress and egress to the trailer. Dadd had no Fourth Amendment expectation of privacy in the fenced area surrounding the trailer because it was not so private that it "harbor[ed] those intimate activities associated with domestic life...." Id. The agents' investigative entry onto the property was reasonable. See Ball v. Georgia, 733 F.2d 1557, 1560 (11th Cir.1984) (an officer's presence in front of a residence, even if the action constitutes a search or an invasion of a reasonable expectation of privacy, is not an illegal or unreasonable search).
 
 
 19
 2. FLASHLIGHT BEAM ILLUMINATION OF INTERIOR OF TRAILER
 
 
 20
 The appellants assert Agent Cavazos' illumination of the interior of the trailer using a flashlight constituted an unreasonable search. They admit the agents could permissibly shine their flashlight into a protected area without making the observations unreasonable. See Dunn, 480 U.S. at 305. Instead they argue "the illegal search occurred when the repeated demands for Defendant Dadd to exit the trailer resulted in the door being opened so as to enable the agents to see inside." The Ninth Circuit has determined a search occurs when police visually inspect a room while standing outside the entryway if the door was opened at their command under a claim of lawful authority. See United States v. Winsor, 846 F.2d 1569, 1572-73 (9th Cir.1988) (en banc).
 
 
 21
 The agents' initial approach of the trailer poses no problem because the agents knocked and then only identified themselves after Dadd asked who was outside. See id. at 1573 (police did more than merely knock on the front door of the residence). Although subsequent approaches of the trailer may have been under the authority of the Border Patrol, this alone is not sufficiently coercive to constitute a "command." The appellants cite no testimony indicating the agents demanded Dadd exit the trailer to speak with them. In Dadd's brief, he acknowledges that he exited the trailer at the "request" of the agents.
 
 
 22
 Agent Cavazos' observation of the bundles in the trailer did not result from an attempt to search the premises, but was an inadvertent consequence of illuminating Dadd as a safety precaution. The district court so found as a matter of fact. Construing the evidence most favorably to the government, Castillo, 866 F.2d at 1082, we conclude Dadd exited the trailer of his own free will. Therefore, no "search"[3] occurred under this court's decision in Winsor.
 
 3. CONSENT
 A. Factual Finding
 
 23
 The district court found Dadd consented to the search of the trailer. The appellants argue the finding is clearly erroneous. We disagree.
 
 
 24
 Dadd was aware of his right to refuse the agents access to search the trailer and he exercised the right at least twice. The agents testified Dadd told them he was thinking about allowing them to conduct a search of the trailer and then responded, "ok, you can come in."
 
 
 25
 Dadd points out that he invoked his Fifth Amendment privilege and refused to answer any questions after the consent was given. He argues the "invocation of his right to remain silent makes no sense at all immediately following a consent to search which would inevitably lead to the discovery of an enormous amount of contraband." Dadd's use of the Fifth Amendment does not compel a factual finding that is at odds with the district court's conclusion that consent was given. See United States v. Iglesias, 881 F.2d 1519, 1522 (9th Cir.1989) (consent was valid and voluntary even though the defendant desired to invoke her Fifth Amendment right against self-incrimination), cert. denied, 493 U.S. 1088 (1990). The district court's finding is not clearly erroneous.
 
 B. Arrest
 
 26
 The appellants argue Dadd's consent is "tainted by the prior illegal conduct [of] the agents." They assert Dadd was arrested when the agents surrounded his home and indicated they would not let anyone leave until they had obtained a search warrant.
 
 
 27
 An arrest occurs when, in view of all the circumstances, a reasonable person would have believed he was not free to leave. Florida v. Royer, 460 U.S. 491, 502-03 (1983). No bright line rule is established, but important factors include whether the agents drew their weapons, the threatening presence of several officers, the use of abusive language, the volume of the agents' voices, physical touching of the individual, and the length of time the individual is detained. United States v. Sharpe, 470 U.S. 675, 685 (1985); United States v. Mendenhall, 446 U.S. 544, 554 (1980). Our review must consider "the law enforcement purposes to be served by the [detention] as well as the time reasonably needed to effectuate those purposes." Sharpe, 470 U.S. at 685.
 
 
 28
 Dadd was allowed to enter and exit the trailer of his own free will. The agents never drew their guns, physically touched Dadd, raised their voices, removed Dadd from the property, or used abusive language. Although the agents stated nobody would be leaving the property until a search warrant was obtained, the presence of the agents in the vicinity of Dadd's trailer was minimally intrusive and was supported by a valid law enforcement purpose.
 
 
 29
 Even if we assume Dadd was arrested when the agents advised him no one was free to leave, this arrest was valid. When the officers made their confining statement, they clearly had more than ample probable cause to arrest Dadd and anyone else in the trailer. The activity previously recounted in this disposition--illegal nighttime border crossings, brush-out, and the observance of drug bundles in the trailer--would lead a reasonable person to conclude Dadd and his companions were drug smugglers caught red-handed. Thus, no illegal arrest occurred which could taint any consent thereafter given.
 
 C. Voluntariness
 
 30
 Dadd asserts his consent was involuntary because (1) he was confronted by heavily armed Border Patrol agents at four o'clock in the morning, (2) the agents did not inform Dadd he had the right to refuse consent, (3) he consented only after repeated questioning, and (4) the agents impermissibly threatened to obtain a search warrant.
 
 
 31
 "Voluntariness is based on the totality of the circumstances." Preciado-Robles, 954 F.2d at 569. In some circumstances, an agent's reference to his ability to obtain a search warrant is so coercive that any subsequent consent is involuntary. See Bumper v. North Carolina, 391 U.S. 543, 548 (1968) (consent involuntarily obtained where official asserted he possessed a search warrant); United States v. Ocheltree, 622 F.2d 992, 994 (9th Cir.1980) (consent involuntary where agent threatened the defendant with unreasonable detention if he did not consent). However, merely informing the defendant that the premises can be secured and a warrant obtained if consent is not given will not render the subsequent consent involuntary. See Iglesias, 881 F.2d at 1522 (informing defendant a search warrant and grand jury subpoena were viable options is not impermissible because it is not as deceptive or coercive as facts in Bumper ); United States v. Salvador, 740 F.2d 752, 757 (9th Cir.1984) (defendant voluntarily consented when he "was presented with the option of either an immediate consent search or one conducted pursuant to a warrant if it could be obtained in the morning"), cert. denied, 469 U.S. 1196 (1985); United States v. Agosto, 502 F.2d 612, 614 (9th Cir.1974) (consent was voluntary where officer stated "he would obtain a search warrant if consent were not given and in the meantime would secure the garage and premises").
 
 
 32
 Agent Davila testified Dadd was advised the agents "were going to attempt to get a search warrant and that nobody was going to be leaving the premises." (Emphasis added.) Notifying the defendant an attempt will be made to obtain a search warrant is drastically different than either stating a search warrant has already been obtained or threatening unreasonable detention or arrest if consent is not given. We conclude the statement was not impermissible because Dadd was merely informed that a search warrant would be obtained and the premises secured until that time. This action was neither deceptive nor coercive, and did not vitiate Dadd's subsequent consent.
 
 
 33
 Our analysis is not altered by the fact Dadd may have been under arrest at the time of his consent. Even if a person is under arrest, consent to search is valid so long as the consent is voluntary. Whether the consenting party is under arrest is merely one factor to be considered in evaluating the voluntariness of the consent. Preciado-Robles, 954 F.2d at 569. Even if the agents' statements effectively amounted to an arrest, at the time Dadd consented to the search he was free to move about the trailer and the surrounding vicinity. The agents had no direct control over him. We cannot conclude that an arrest under these circumstances would render Dadd's consent involuntary.
 
 
 34
 Although the Border Patrol agents were armed, the appellants do not allege the guns were drawn when consent was sought. Dadd undeniably was aware of his right to refuse consent, therefore the fact the agents did not inform him of this right carries little weight in our evaluation of the facts.
 
 
 35
 Although Dadd refused consent twice before he allowed the search, a repeated request for consent is merely one factor to consider in evaluating the voluntariness of subsequently obtained consent. The Border Patrol agents did not bombard Dadd with requests to search the trailer,[4] but appropriately confronted him only the minimal number of times necessary to carry out their investigative duties. The totality of the circumstances solidly supports a finding that Dadd's consent was voluntary.[5] We agree with the findings of the district court that Dadd consented, and the consent was valid.
 
 4. SEARCH OF BUNDLES
 
 36
 The appellants argue the agents illegally searched the contents of the bundles found in the trailer. The agents informed Dadd they believed the trailer contained concealed narcotics or illegal aliens. Dadd consented to a general search of the trailer after being fully aware of the objects of the search. No explicit limitations were placed on the scope of the search. Because Dadd's consent was valid and voluntary, the scope of the consent extended to permit a search of the bundles. "[I]t was objectively reasonable for the [agents] to conclude that the general consent to search [Dadd's trailer] included consent to search containers within that [trailer] which might bear drugs." Florida v. Jimeno, 111 S.Ct. 1801, 1804 (1991).
 
 
 37
 No problem is created merely because the search was conducted later at the Border Patrol Station. Once consent to search is given, there is no reasonable expectation of privacy in the area to be searched and a later search is valid. See United States v. Mines, 883 F.2d 801, 804-05 (9th Cir.) (consent to search was still valid at a later time because not withdrawn by the defendant), cert. denied, 493 U.S. 997 (1989); United States v. Burnette, 698 F.2d 1038, 1049 (9th Cir.) ("we hold that once an item in an individual's possession has been lawfully seized and searched, subsequent searches of that item, so long as it remains in the legitimate uninterrupted possession of the police, may be conducted without a warrant"), cert. denied, 461 U.S. 936 (1983).
 
 CONCLUSION
 
 38
 Viewing the evidence in the light most favorable to the government, we conclude the district court correctly denied the appellants' motions to suppress. No Fourth Amendment violation occurred when the agents entered the fenced property to seek consent to search, nor when the agents' use of a flashlight allowed them to inadvertently observe bundles in the trailer. The agents' warrantless search of Dadd's trailer squarely falls within the consent exception to the warrant requirement. Dadd's consent extended to the contents of the bundles found within the trailer.
 
 
 39
 AFFIRMED.
 
 
 
 *
 The Honorable John Minor Wisdom, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Each time Dadd entered or exited the trailer, he would open the door only enough to squeeze his body through
 
 
 [2]
 The government argues Escalante-Gamez and Gonzalez-Herrera lack standing to challenge the search of Dadd's trailer. The government should have disputed this issue in the district court because Escalante-Gamez specifically stated in his motion to suppress that he had standing to contest the search. The government did not raise this issue in the district court, therefore we will not consider it on appeal. United States v. Winebrenner, 924 F.2d 851, 856 n. 7 (9th Cir.1991)
 
 
 [3]
 The appellants also argue the agents' view of the bundles (as compared to seizure of the bundles) constituted a warrantless search that does not fall within the plain view exception. This argument is meritless because "mere observation of an item left in plain view ... involves no Fourth Amendment search...." Horton v. California, 496 U.S. 128, 133 n. 5 (1990)
 
 
 [4]
 Dadd attempts to increase the number of times he refused consent by focusing on the three times he exited the trailer. A review of the transcripts clearly shows consent was sought and denied only twice
 
 
 [5]
 We also note that Miranda warnings do not necessarily need to precede consent to search. Whether Miranda warnings were given is merely one factor to consider in evaluating the voluntariness of the consent. See United States v. Ritter, 752 F.2d 435, 438-39 (9th Cir.1985). Therefore, our analysis is not altered by the fact that Dadd may have consented to the search of his trailer after an arrest but prior to receiving Miranda warnings. See supra Part 3.B