# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

                v.

ASCENSION ALVEREZ-TEJEDA, aka;
Chombi,

            *Defendant-Appellee.*

No. 06-30289

D.C. No.
CR-05-00126-RHW

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Robert H. Whaley, District Judge, Presiding

Argued and Submitted
April 9, 2007—Seattle, Washington

Filed June 8, 2007

Before: Alex Kozinski, Raymond C. Fisher and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Kozinski;
Concurrence by Judge Fisher

## COUNSEL

James A. McDevitt, United States Attorney, and Russell E. Smoot, Assistant United States Attorney, Spokane, Washington, for the plaintiff-appellant.

James E. Egan, Kennewick, Washington, for the defendant-appellee.

## OPINION

KOZINSKI, Circuit Judge:

We consider the Fourth Amendment's limits on the use of trickery and force in conducting seizures.

### Facts

Ascension Alverez-Tejeda and his girlfriend drove up to a traffic light. As the light turned green, the car in front of them lurched forward, then stalled. Alverez-Tejeda managed to stop in time, but the truck behind him tapped his bumper. As Alverez-Tejeda got out to inspect the damage, two officers pulled up in a police cruiser and arrested the truck driver for drunk driving. The officers got Alverez-Tejeda and his girlfriend to drive to a nearby parking lot, leave the keys in the car and get into the cruiser for processing. Just then, out of nowhere, someone snuck into their car and drove off with it. As the couple stood by in shock, the police jumped into their cruiser and chased after the car thief with sirens blaring. The police then returned to the parking lot, told the couple that the thief had gotten away and dropped them off at a local hotel.

The whole incident was staged. DEA agents learned that one of the leaders of a drug conspiracy was dealing drugs out of his car and deduced from several intercepted calls and direct surveillance that Alverez-Tejeda, one of the conspiracy's subordinates, was using the leader's car to transport illicit drugs. The agents decided to stage an accident/theft/chase in order to seize the drugs without tipping off the conspirators. Every character in the incident, other than Alverez-Tejeda and his girlfriend, was either a DEA agent or a cooperating police officer.

Having seized the car through this ruse, the agents obtained a search warrant and discovered cocaine and methamphetamine inside, as well as property belonging to Alverez-Tejeda and his girlfriend. The government indicted Alverez-Tejeda but the district court found that the method of seizure violated the Fourth Amendment and suppressed the evidence obtained from the vehicle. The government filed an interlocutory appeal. *See* 18 U.S.C. § 3731.

## Analysis

**[1]** The parties agree that the DEA agents had the right to seize the car without a warrant: "If agents have probable cause to believe that a car is or has been used for carrying contraband, they may summarily seize it pursuant to the federal forfeiture statutes." *United States* v. *Johnson*, 572 F.2d 227, 234 (9th Cir. 1978) (internal quotation marks omitted); *see also Florida* v. *White*, 526 U.S. 559, 561 (1999) (police may administratively seize a car without a warrant). The agents had probable cause to believe that the car had been "used for carrying contraband" because they had purchased drugs from inside it as part of their investigation. They also had probable cause to believe the car was carrying contraband on the day of the seizure based on several intercepted phone calls and direct surveillance. The only issue in doubt is whether their unorthodox method of seizing the car was constitutional.

**[2]** An otherwise lawful seizure can violate the Fourth Amendment if it is executed in an unreasonable manner. *See United States* v. *Jacobsen*, 466 U.S. 109, 124 (1984). "To assess the reasonableness of th[e] conduct, [a court] must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* at 125 (internal quotation marks omitted). While agents have discretion to decide "how best to proceed" in conducting a covert operation, they must abide by the "general" protections

of the Fourth Amendment. *Dalia* v. *United States*, 441 U.S. 238, 257 (1979).

**[3]** The benchmark for the Fourth Amendment is reasonableness, which requires us to weigh the government's justification for its actions against the intrusion into the defendant's interests. *Jacobsen*, 466 U.S. at 125. The government here certainly had important reasons for employing this unusual procedure in seizing the car. First, the agents wanted to stop the drugs before they reached their ultimate destination—a patently important goal. Second, they wanted to protect the anonymity of the ongoing investigation—another vital objective. The Supreme Court has emphasized "the necessity for some undercover police activity," *Lewis* v. *United States*, 385 U.S. 206, 208—09 (1966), and explained that "[a]rtifice and stratagem may be employed to catch those engaged in criminal enterprises[;] . . . to reveal the criminal design; [or] to expose the illicit traffic, . . . the illegal conspiracy, or other offenses," *id.* at 209 n.5 (quoting *Sorrells* v. *United States*, 287 U.S. 435, 441—42 (1932)) (first alteration in original). Protecting the secrecy of an ongoing investigation is a well-recognized consideration in the administrative seizure process. *See* 18 U.S.C. § 983(a)(1)(D)(v) (providing for an extension not to exceed 60 days for notifying interested parties where more prompt notice would "seriously jeopardiz[e] an investigation").

**[4]** At the same time, the intrusion into Alverez-Tejeda's Fourth Amendment interests was relatively mild. First, Alverez-Tejeda argues that the agents were unreasonable in using force to seize the car. While the police may not use *excessive* force in conducting a search or seizure, *see, e.g.*, *Winterrowd* v. *Nelson*, 480 F.3d 1181, 1184, 1186 (9th Cir. 2007), the force here was minimal. The district court found that the agent in the truck bumped the stationary car with "enough force . . . so that the *tap* was felt by Defendant to the extent that it caused him to get out of his car and examine his bumper" (emphasis added), but the truck was moving at only

1 to 2 miles per hour and the tap caused no harm to the couple and left no scratch on the car. A tap is a use of force, to be sure, but it is hardly excessive. The staged collision involved just enough force to pull off the "drunk driver" ruse, without causing physical injury to the suspects.

This would be a different case if the government's tactics created a serious risk of bodily injury or escalation of violence, which might well have outweighed the interest in protecting the investigation. The balance may well be different if the police simulated a car heist by running Alverez-Tejeda off of the road or staged a car-jacking by holding him up at gun-point. In this case, however, the use of force and potential for physical harm were within reasonable bounds.

**[5]** Nor was there anything unreasonable in the agents' choice of guile to seize the car, rather than taking it outright, as they were entitled to do. While we don't generally second-guess the government's use of stealth to ferret out criminal activity, *see Dalia*, 441 U.S. at 257, we take a closer look when agents identify themselves as government officials but mislead suspects as to their purpose and authority. This is because people "should be able to rely on [the] representations" of government officials. *United States* v. *Bosse*, 898 F.2d 113, 115 (9th Cir. 1990) (per curiam) (internal quotation marks omitted). If people can't trust the representations of government officials, the phrase "I'm from the government and I'm here to help" will become even more terrifying.

**[6]** This concern is at its zenith when government officials lie in order to gain access to places and things they would otherwise have no legal authority to reach. "We think it clearly improper for a government agent to gain access to [property] which *would otherwise be unavailable to him* by invoking the private individual's trust in his government . . . ." *See id.* (internal quotation marks omitted) (emphasis added). This consideration is not implicated by the agents' actions here because they already had the authority to seize the car and

arrest Alverez-Tejeda; their lies didn't have the effect of expanding their ostensible authority beyond the scope of their actual authority. The only consequence of their deceit was to treat Alverez-Tejeda as a victim, rather than a criminal suspect—driving him to a hotel rather than immediately dragging him off to jail—and the only harm he suffered was being misled and subjected to the fright that comes from being the victim of a crime.[1] We find that the agents' actions in misleading Alverez-Tejeda were reasonable in light of their vital interest in seizing the drugs and not exposing their investigation.

**[7]** That the agents took some of Alverez-Tejeda's property that was in the car, including a camera, checkbook and clothing, didn't make their actions unreasonable. They did return the purse and cell phone, explaining that the thief had thrown them out the window during the pursuit. Had they also returned the rest of the property, they might have blown the ruse. The delay in notifying Alverez-Tejeda that his property had been seized, and giving him an opportunity to claim it, was reasonable in light of the government's important objective of protecting the secrecy of its investigation. *See* 18 U.S.C. § 983(a)(1)(D)(v).

**[8]** Finally, Alverez-Tejeda claims that the agents scared his girlfriend, searched her in an overly invasive manner and engaged in a potentially dangerous mock pursuit after taking the car. While Alverez-Tejeda doesn't argue that he has standing to assert the Fourth Amendment rights of his girlfriend or the drivers on the road, we have speculated that "in extreme cases where there is no apparent justification for oppressive conduct," a search that is "outrageous" or "shocking" in its intrusion on third parties' rights could be unconstitutional. *See United States* v. *Offices Known as 50 State Distrib. Co.*, 708

---

[1]Doubtless, Alverez-Tejeda was more frightened about the fact that he lost the boss's car with the stash of drugs in it, but *that* fear arose from the lawful seizure of the car, not the deceit.

F.2d 1371, 1376 (9th Cir. 1983) (internal quotation marks and citations omitted). Even if we were to accept this dictum, nothing here comes close to satisfying this high standard. The patdown of the girlfriend was a standard method of ensuring officer safety, and there is no evidence that the mock car chase endangered anyone.[2]

[9] In sum, we hold that the agents' manner of executing the seizure was constitutional.[3]

**REVERSED and REMANDED**.

---

FISHER, Circuit Judge, concurring:

I concur but also write separately to acknowledge the district court's concerns about the unorthodox manner in which the seizure here was carried out. The staged collision, "theft" of the car (and all of its contents), car chase and search of Alverez-Tejeda's apparently innocent companion had the potential to spin out of control and exceed reasonable bounds. Nonetheless, on the record before us I agree with my colleagues that the agents' ruse stayed within bounds (even if they pushed the envelope in some respects). Although we do not sustain the district court's thoughtful analysis, I do not thereby mean to endorse this police action as a model for future creative seizures.

---

[2]For the same reasons, we decline Alverez-Tejeda's request that we order the district court to dismiss his indictment on the ground that the government's conduct was "so grossly shocking and so outrageous as to violate the universal sense of justice." *See United States* v. *Barrera-Moreno*, 951 F.2d 1089, 1092 (9th Cir. 1991) (internal quotation marks omitted).

[3]We thus have no occasion to consider whether exclusion of the evidence would have been an appropriate remedy. *See Hudson* v. *Michigan*, 126 S. Ct. 2159, 2170 (2006) (unconstitutional manner of search or seizure "does not necessarily trigger the exclusionary rule").