UNITED STATES of America,
Plaintiff-Appellee,

v.

Leonard G. GREENE,
Defendant-Appellant.

No. 85–1156.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 13, 1986.

Decided Feb. 28, 1986.

Susan B. Titus, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

J. Frank McCabe, Goorjian & McCabe, San Francisco, Cal., for defendant-appellant.

Before POOLE and BEEZER, Circuit Judges, and JAMESON,* District Judge.

POOLE, Circuit Judge:

Appellant Leonard G. Greene appeals his conviction for armed robbery under 18 U.S.C. §§ 2113(a), 2113(d). Appellant contends that the district court erred in denying his motion to suppress evidence which had been seized from his motel upon his purported consent, because that consent was the direct result of an illegal warrantless arrest. He also contends that the dis-

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

trict court should have dismissed his indictment under the Speedy Trial Act, 18 U.S.C. § 3161(h)(1)(H) because it took U.S. officers twenty-three days to transport him from Huntsville, Alabama, the place of arrest, to the Northern District of California, the place of trial. We affirm.

On December 5, 1984, police officers in Huntsville, Alabama received information from a local prostitute, who had given Huntsville police reliable information in the past, that she had received currency with red stains on it from two white males the day before. This money was given to her to buy drugs for one of the men and for "sexual services." When the informant went to purchase drugs for the shorter man with the stained money, the drug dealer expressed a reluctance to accept the bills. She told the police that she had been in the men's motel room and had observed a pistol and wads of red-stained money; one man was very large and the other was about 5'6", 160 lbs. with a ruddy complexion; and that they were driving a small red car with out-of-state license plates. The informant said that she had used some of the red-stained money to pay for her motel room. She then referred police to the manager of the motel. The Huntsville police and the FBI later paid the informant $700 for providing this information.

At the motel, police obtained ten five-dollar bills stained with red. They checked the serial numbers of these bills and determined that the money was not "bait money" from a reported robbery. The bills were returned to the motel manager.

The next day, the manager of another motel in Huntsville, the Hillcrest Motor Court, called the police to report that she believed that the occupants of room number 5 were bank robbers. She based her conclusion on the fact that she had found, in a trash can outside room number 5, a green jacket, a black cap, a pair of brown gloves, a cardboard back to a legal pad containing what appeared to her to be radio frequencies for the FBI, police, and sheriff's departments, and a yellow sheet of paper which appeared to contain a diagram of a bank. She described a red and white Rambler automobile the occupants were driving which had out-of-state plates. The Huntsville police then contacted the FBI, and officers and agents from both departments went to the motel to interview the manager, and, if possible, to talk to the occupants of room number 5.

When the officers and agents arrived at the motel they observed two men in a red and white Rambler pulling out of the parking spot in front of room number 5. The officers prevented the Rambler's exit with the police cars. The officers then approached the occupants and told them to "put their hands on the headliner." When appellant, who was driving, did not immediately comply, the officers drew their weapons and ordered him to put his hands on the roof. The appellant and his companion, Thomas Clarke, were ordered out of the car and were frisked for weapons. The officers discovered concealed weapons on both men. Officers also observed a sawed-off rifle in plain view in the back seat of the car. The police then informed the men that they were under arrest for carrying concealed weapons.

Immediately after his arrest, Greene signed a consent form allowing the officers to search his motel room, room number 5. During the search police discovered money marked with red dye and a money wrapper with stamps of First Enterprise Bank. The FBI agents then discovered that Greene and Clarke fit the description of the bank robbers who had robbed the First Enterprise Bank in Berkeley, California on November 19, 1984. The two men thereafter were transferred to federal custody.

On December 14, 1984, Greene was charged in a one-count indictment with armed robbery and was ordered removed to the Northern District of California. He did not arrive in the Northern District until January 6, 1985, twenty-three days later. A superceding indictment charged Greene and Clarke with the armed robbery of the First Enterprise Bank in Berkeley.

Appellant moved to suppress the evidence seized during the search of his motel

room in Huntsville. He argued that the search was the direct result of an illegal warrantless arrest because the police lacked probable cause to believe that he had committed a bank robbery. *See Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). After conducting evidentiary hearings, the district court concluded that the police had probable cause to arrest appellant for bank robbery when they arrived at the motel.

■ The ultimate conclusion of presence or absence of probable cause is a mixed question of law and fact. *Ker v. California,* 374 U.S. 23, 33–34, 83 S.Ct. 1623, 1629–30, 10 L.Ed.2d 726 (1963); *United States v. Alfonso,* 759 F.2d 728, 741 (9th Cir.1985). The underlying facts as found by the district court are to be accepted unless clearly erroneous. The court's ultimate conclusion, however, is reviewed *de novo. Pullman-Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982); *Alfonso,* 759 F.2d at 741. The test for probable cause is whether "facts and circumstances within the officer's knowledge * * * are sufficient to warrant a prudent person, or one of reasonable caution, [to believe], in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Michigan v. De Fillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979); *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964); *Alfonso,* 759 F.2d at 741.

■ We conclude that the police did not have probable cause to arrest appellant when they first arrived at the Hillcrest Motor Court. The information provided by the manager of the Hillcrest Motel on the day of the arrest did not identify the occupants in room number 5 as the two men the informant had described at a different motel the previous day. While both informants had described a red car with out-of-state license plates, this common thread of connection, in a city the size of Huntsville, is too tenuous to support a conclusion that when the officers and agents pulled into the motel parking lot, they had probable cause to believe that the occupants of the red Rambler had committed an offense.

■ But although the police, at the moment of the stop, lacked probable cause to arrest appellant, we conclude that they possessed sufficient information to justify a *Terry* stop. An officer may make a brief investigatory stop of a moving vehicle if, under the totality of the circumstances, the officer knows of articulable facts leading to a reasonable or founded suspicion that the individual stopped may be or has been engaged in criminal activity. *United States v. Corral-Villavicencio,* 753 F.2d 785, 789 (9th Cir.1985); *see United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981); *United States v. Brignoni-Ponce,* 422 U.S. 873, 884, 95 S.Ct. 2574, 2581, 45 L.Ed.2d 607 (1975).

The facts of this case support such a stop. The informant had described two white men, one large, one short, who drove a red car with out-of-state license plates and who were in possession of red-stained money. The motel manager at the Hillcrest described a diagram of a bank and a list of radio frequencies suggesting that the occupants of room number 5 might either have committed a bank robbery or might be planning such a robbery. These occupants drove a red and white Rambler with out-of-state license plates. While not amounting to probable cause, these facts sufficiently established founded suspicion of criminal activity justifying the investigatory stop of appellant's car.

■ The fact that the officers told the men to put their hands on the car's headliner and then drew their weapons when appellant failed to comply did not necessarily transform the stop into an arrest. A valid stop does not become an arrest merely because law enforcement agents momentarily restrict a person's freedom of movement. *United States v. Jacobs,* 715 F.2d 1343, 1345 (9th Cir.1983). Nor will the use of force in making the stop convert the stop into an arrest "if it occurs under circumstances justifying fears for personal

safety." *Id.* at 1345–46 (quoting *United States v. Beck,* 598 F.2d 497, 501 (9th Cir. 1979)). *See United States v. Bautista,* 684 F.2d 1286, 1289–90 (9th Cir.1982), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 447 (1983). The informant told the police that she had seen a pistol in the motel room of the two men she had described. These circumstances justified the officers' actions in drawing their weapons and ordering both men out of the car.

 Once out of the car, the officers were justified in frisking appellant. Police are entitled to take steps to assure that the person stopped is not armed. *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972); *Terry v. Ohio,* 392 U.S. 1, 23–24, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889 (1968). Finally, "[f]ounded suspicion to stop for investigatory detention may ripen into probable cause to arrest through the occurrence of facts or incidents after the stop." *United States v. Medina-Gasca,* 739 F.2d 1451, 1453 (9th Cir.1984). It was during the frisk of appellant that the police discovered that he was armed. This discovery independently gave the officers probable cause to arrest appellant for possession of a concealed weapon, a violation of state law. Given that this arrest was legal, we affirm the district court's order denying appellant's motion to suppress. *See Robins v. Harum,* 773 F.2d 1004, 1008 (9th Cir.1985) (district court may be affirmed on any basis fairly supported by the record).

 Appellant also argues that the twenty-three day period it took the government to transport him to the Northern District of California was unreasonable under the Speedy Trial Act, 18 U.S.C. § 3161(h)(1)(H), and therefore the district court should have dismissed the indictment. The Speedy Trial Act prescribes that

> [i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an * * * indictment with the commission of an offense shall commence within seventy days from the filing date * * * of the * * * indictment, or from the date the defendant has ap-

peared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1). Under the Act, delay resulting from transportation of a defendant from another district shall be excluded in computing the time within which the trial of an offense must commence, but "any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable." 18 U.S.C. § 3161(h)(1)(H). The government contends that under § 3161(c)(1) the exclusion section for transportation of appellant is not triggered until his initial appearance before a judicial officer in the Northern District of California. Under the circumstances present here this issue of statutory construction need not be addressed because even if the excess travel is included, appellant was still tried within the time period mandated by the Act.

It took the government twenty-three days to transport appellant to the Northern District of California, and the district court excluded all twenty-three days in calculating the maximum trial date. This exclusion, along with other exclusions attributable to various pretrial motions, resulted in a maximum speedy trial date of April 30, 1985. Even if thirteen of the twenty-three days are presumed unreasonable under § 3161(h)(1)(H) and thus included in the 70-day time limit for the commencement of trial, the maximum allowable trial date would be April 17, 1985. Because appellant was tried on April 8 and 9, 1985, he was still tried within the temporal limits set by the Act.

AFFIRMED.