**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Darius KOSHNEVIS, aka James
Frederick Koshnevis, Defendant–
Appellant.**

**No. 91–50050.**

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 5, 1992 *.

Submission Withdrawn Feb. 6, 1992.

Resubmitted Sept. 10, 1992.

Decided Oct. 27, 1992.

As Amended Nov. 23, 1992.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Kathryn Thickstun Leff, San Diego, Cal., for defendant-appellant.

Roger W. Haines, Jr., Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before: WALLACE, Chief Judge, BROWNING and SKOPIL, Circuit Judges.

WALLACE, Chief Judge.

Koshnevis appeals from a judgment of conviction after a jury trial for possession of methamphetamine with intent to distribute, 21 U.S.C. § 841(a)(1); and use of a firearm in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1). The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We withdrew submission pending our en

banc decision in *United States v. Rubio–Villareal*, 967 F.2d 294 (9th Cir.1992) (en banc) (*Rubio–Villareal*). We now affirm.

## I

On January 8, 1990, Koshnevis was driving alone in a northwardly direction when he was stopped by Border Patrol Agent Nicodemus at a permanent immigration checkpoint in Temecula, California. Nicodemus approached the car and knocked on the window. He testified that Koshnevis was looking straight ahead, that his right hand was placed next to him on the driver's seat, and that his left hand was shaking visibly. Koshnevis rolled down the window and Nicodemus asked him where he was going. Koshnevis nervously replied "Temecula." Nicodemus inquired as to the ownership of the vehicle, and Koshnevis replied that it was his.

Nicodemus referred the vehicle to secondary inspection because Koshnevis appeared nervous and agitated. At secondary inspection, Koshnevis got out of the vehicle. Nicodemus identified himself and asked Koshnevis's permission to search the trunk for an immigration inspection. Koshnevis then stated that the car belonged to his girlfriend and that he did not have a key to the trunk. Nicodemus asked Koshnevis if he had any weapons on his person or in the car, to which Koshnevis replied that he did not. Nicodemus next asked if he could search the interior of the car. Upon receiving Koshnevis's consent, Nicodemus found a loaded .38 caliber handgun in the front seat.

Nicodemus placed Koshnevis under arrest. With the keys that he found in the ignition, he opened the trunk of the car to inventory its contents and smelled methamphetamine. The trunk held some clothing and a shopping bag. Inside the bag Nicodemus found two packages containing approximately 1000 grams of 66 percent pure methamphetamine in addition to a bottle of mannitol and two bottles of vitamin B, both of which are commonly used as "cutting" agents for methamphetamine. Upon a subsequent search of Koshnevis, Nicodemus found approximately 4 grams of 55 percent pure methamphetamine. Nicodemus also discovered $1600 in cash, an electronic telephone book, a telephone pager, and a blank birth certificate from the State of West Virginia.

Agent Anderson of the Drug Enforcement Agency was called to the border station to fingerprint Koshnevis. Koshnevis voluntarily stated to him that "I am in trouble, right, because of the concealed weapon and the methamphetamine on me. I can't get that much time for a concealed weapon; besides, all that methamphetamine wasn't mine." Anderson also searched the trunk and found one gram of 66 percent pure methamphetamine in the coin pocket of a pair of jeans with the same waist size as the pants Koshnevis was wearing at the time of his arrest.

## II

We first address the three challenges Koshnevis raises to the denial of his motion to suppress evidence found at the checkpoint search.

### A.

Koshnevis argues that Nicodemus ordered an initial stop of his vehicle, and a subsequent referral to a secondary inspection checkpoint, without reasonable suspicion or probable cause in violation of the Fourth Amendment. Whether detention at a permanent immigration checkpoint violates an individual's Fourth Amendment rights is a question of law reviewed de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

Koshnevis argues that the investigation conducted by Nicodemus was beyond the scope of an immigration stop, as allowed by *United States v. Martinez–Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), and is therefore governed by the more stringent "reasonable suspicion" requirements of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). He asserts that Nicodemus "began the investigation by searching Mr. Koshnevis and the

vehicle for a weapon." However, at the hearing on Koshnevis's motion to suppress, Nicodemus testified that after stopping Koshnevis, he requested permission to look into the trunk "for an immigration inspection." The district court found Nicodemus credible and rejected Koshnevis's argument that the referral and the inspection were pretenses for a weapon or drug search.

In the factually similar case of *United States v. Barnett*, 935 F.2d 178, 181 (9th Cir.1991), we rejected the argument presented here that referral to secondary inspection "was not at all for further investigation as to immigration-related offenses, but, rather, for investigation as to drug-related offenses." We held that *Martinez–Fuerte* "does not mandate an inquiry into the subjective purpose of the agent making referrals to secondary inspection, unless there is some objective evidence supporting the charge of pretext." *Id.* In the absence of affirmative evidence that Nicodemus harbored a subjective purpose in referring Koshnevis to secondary inspection for drug-related offenses, we will not require an agent to demonstrate articulable suspicion for an otherwise legitimate immigration stop. *Id.* at 181–82. *Martinez–Fuerte* and *Barnett* control here. We therefore reject Koshnevis's pretext argument.

### B.

Koshnevis also argues that the district court erred in finding that he voluntarily consented to the search of the passenger compartment of the vehicle. We review the district court's factual finding under the "clearly erroneous" standard. *United States v. Shaibu*, 920 F.2d 1423, 1425 (9th Cir.1990).

"When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968), *quoted in Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). Koshnevis contends that he was so intoxicated at the time of the stop, a reasonable officer

would conclude that his consent to the search was not the product of a rational intellect and a free will. The district court, after hearing the evidence, determined that Koshnevis had consented to the search and denied the motion to suppress. There is sufficient evidence in the record to demonstrate this finding was not clearly erroneous. Nicodemus testified that Koshnevis appeared alert and cooperative. Koshnevis was also clear-minded enough to construct several lies in an attempt to prevent Nicodemus from inspecting the trunk. Koshnevis presented no evidence that he was intoxicated at the time. Nor is there any evidence that the district court based its ruling on a subjective, rather than an objective, standard. We conclude that the district court finding was not clearly erroneous.

Koshnevis also asserts that the district court erred in failing to make a specific finding that a *reasonable* officer would have found his consent to be voluntary. The district judge's ruling that the consent was valid followed immediately after, and was responsive to, defense counsel's argument that an "experienced officer would have suspected" that Koshnevis was under the influence of drugs.

Koshnevis argues that the standard to be applied is an objective one; that is, based on the facts available at the time, would a reasonable officer conclude that consent was voluntary. *See Illinois v. Rodriguez*, 497 U.S. 177, 188–89, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990). Assuming that the new rule announced in *Rodriguez* applies to this case, *see Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987), we hold that reversal is not necessary. "When a court does not enter a specific finding, we will uphold the result if it is reasonably supported in the record." *United States v. Twine*, 853 F.2d 676, 681 (9th Cir.1988). The district judge heard evidence that specifically addressed the intoxication issue. Although the factual findings made by the district court were not extensive, the evidence was not in conflict. Only Nicodemus testified at the hearing. By denying the motion to dis-

miss, it is evident that the district court agreed with the testimony of Nicodemus. The factual findings by the district court therefore satisfy the requirements of Federal Rule of Criminal Procedure 12. *See United States v. Prieto–Villa,* 910 F.2d 601 (9th Cir.1990).

Because the district court's factual findings and the record support the conclusion that a reasonable officer would have viewed Koshnevis's consent as voluntary, we hold that the district court did not clearly err.

## C.

■ Koshnevis contends that the warrantless search of the trunk was unlawful because it was invalid as an inventory search and was not justified by probable cause, consent, or as a search incident to arrest. The government argues that Koshnevis waived the right to object to the search by failing to raise the issue before the district court and that the search was justified by probable cause. Koshnevis responds by asserting that he raised the issue in his motion to suppress and that the district court expressly ruled that the search was a valid inventory search.

We need not decide the question whether Koshnevis waived his right to object because we hold that Nicodemus had probable cause to search Koshnevis's trunk. Koshnevis argues that *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), prohibits the government from asserting that Nicodemus had probable cause. In *Steagald,* the Supreme Court pointed out that the government "may lose its right to raise factual issues ... when it has made contrary assertions in the courts below, when it has acquiesced in contrary findings by those courts, or when it has failed to raise such questions in a timely fashion during the litigation." *Id.* at 209, 101 S.Ct. at 1646.

Here, the government has made no contrary assertions nor has it acquiesced in any contrary findings of fact. We do not agree that the government failed to raise the issue in a timely manner given the uncertainty surrounding the scope of Koshnevis's motion to suppress. In any event, we may affirm the district court's denial of a motion to suppress on any ground fairly supported by the record. *See United States v. Baron,* 860 F.2d 911, 917 (9th Cir.1988), *cert. denied,* 490 U.S. 1040, 109 S.Ct. 1944, 104 L.Ed.2d 414 (1989); *United States v. Smith,* 790 F.2d 789, 792 (9th Cir.1986).

Nicodemus testified that Koshnevis was visibly anxious when stopped at the immigration checkpoint; he repeatedly jerked or twitched his head and was unwilling to look at Nicodemus; his right hand was concealed beside him on the driver's seat; and his left hand was visibly shaking. At secondary inspection, after Nicodemus asked permission to search the trunk of the car, Koshnevis contradicted his earlier statement that the car belonged to him by stating that it was his girlfriend's. He also claimed falsely not to have a trunk key. Koshnevis stated that he did not have a weapon on his person or in the car, but Nicodemus found a loaded handgun next to the driver's seat where Koshnevis had earlier rested his hand when initially stopped.

Koshnevis's nervousness, his inconsistent statements regarding the ownership of the car, and the lies about not possessing a trunk key or a weapon constituted probable cause to search the trunk. The district court, although ruling that the search was a valid inventory search, specifically pointed to Koshnevis's behavior and his inconsistent statements in ruling on the motion to suppress. Based on this record, we hold that Nicodemus had probable cause to search the trunk of the car.

## III

■ Koshnevis argues that his trial was infected by an erroneous jury instruction. He contends that the district court created an impermissible presumption by erroneously instructing the jurors that if they found that (1) Koshnevis was the sole occupant and driver of the vehicle, and (2) the vehicle contained methamphetamine, they could, but need not, infer from these two facts alone that Koshnevis knew the meth-

amphetamine was in the vehicle. Koshnevis argues that this presumption allowed the jury to convict him on insufficient evidence, thereby impermissibly shifting the burden to the defendant. *See Sandstrom v. Montana*, 442 U.S. 510, 523, 99 S.Ct. 2450, 2458-59, 61 L.Ed.2d 39 (1979).

In *Rubio–Villareal*, we held that an inference instruction that was given in that case was defective because it "intrud[ed] on the jury's deliberative process," and permitted the jury to convict a defendant by focusing on "isolated facts ... without considering all the evidence presented at trial." *Rubio–Villareal*, 967 F.2d at 299, 300. We also repudiated an instruction used in *United States v. Castillo–Burgos*, 501 F.2d 217 (9th Cir.1974), which allowed the jury to infer knowledge if it found that the defendant was the driver and sole occupant of a vehicle containing contraband. *Rubio–Villareal*, 967 F.2d at 300.

Even if the jury instruction given in this case violates *Rubio–Villareal*, reversal is not required if "there is no reasonable possibility that the error materially affected the verdict." *Id.* at 296 n. 3. We have previously found instructional errors harmless where the evidence of knowledge was "overwhelming." *United States v. Herbert*, 698 F.2d 981, 987 (9th Cir.), *cert. denied*, 464 U.S. 821, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983).

Koshnevis argues that the evidence against him was not overwhelming and that the instruction allowed the jury to reach a verdict without resolving certain factual disputes. Koshnevis testified at trial and his testimony contradicted some of the government's evidence. In addition, a psychologist testified that Koshnevis suffers from an organic brain impairment caused by drug use and that he could not form the requisite intent to commit the crimes charged in this case. The psychologist acknowledged, however, that Koshnevis was responsive, cooperative, and showed no signs of confusion during their interviews. In addition, his testimony was not relevant to the alleged instructional error at issue. That testimony is probative of the issue of Koshnevis's intent to distrib-

ute, *see* 21 U.S.C. § 841(a)(1), and not his knowledge of whether the methamphetamine was in the trunk.

We conclude that the evidence against Koshnevis leaves no reasonable doubt as to his knowledge of the drugs. The methamphetamine found on his person was of the same purity as the drugs found in the trunk. The methamphetamine in the pocket of the jeans in the trunk could have been produced in the same batch as the other drugs in the trunk and on Koshnevis's person. Koshnevis was caught with all the tools of the trade in his possession: an electronic telephone directory, a telephone pager, $1600 in cash, and a loaded handgun.

In addition, Koshnevis's inconsistent responses to Nicodemus's inquiries about the ownership of the car, the trunk key, and the handgun are strong evidence that he knew that the methamphetamine was in the trunk. Koshnevis was the sole occupant of the vehicle, which he admitted had been in his sole possession for at least a day and a half. Finally, Koshnevis's voluntarily offered statement to agent Anderson reveals that he knew the methamphetamine was in the trunk.

Although Koshnevis contradicted some of the government's evidence with his own testimony at trial, it is clear from the great weight of the evidence presented that the jury rejected his innocence defense. We conclude that there is no reasonable possibility that the verdict would have been different had the allegedly improper instruction not been given.

AFFIRMED.