999 F.2d 544
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Maria Del Carmen BELTRAN-LEMUS, Defendant-Appellant.
 No. 92-50671.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 21, 1993.*
Decided July 6, 1993.
 
 Before CANBY, FERNANDEZ and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Maria del Carmen Beltran-Lemus appeals her conviction imposed following jury trial for possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Beltran-Lemus contends that the district court erred by denying her motion to suppress evidence discovered as a result of a non-routine border search and illegal detention. In the alternative, Beltran-Lemus contends that the border agents had probable cause to believe she committed an offense and therefore should have informed her of her rights under Miranda v. Arizona, 384 F.2d 436 (1966) prior to questioning. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 * Background
 
 
 4
 At approximately 11:45 a.m. on January 27, 1992, Special Agent George Halcon of the United States Customs Service received a telephone call from a confidential informant who stated that a woman with three children and the last name of Beltran might be transporting heroin from Mexico into the United States in a red vehicle with the license plate number 1MBH212. Although Agent Halcon had no previous experience with the informant, he telephoned a counterpart at the Narcotics Task Force and learned that the informant was reliable. Agent Halcon placed a lookout for the vehicle into the Treasury Enforcement Communications System (TECS). That evening, at approximately 8:15 p.m., Beltran-Lemus and her three children arrived from Mexico at the Calexico, California port of entry in a red vehicle with license plate number 1MBH212. Because of the TECS lookout, Beltran-Lemus' vehicle was referred to the secondary inspection area, and Agent Halcon was notified and went to the port of entry.
 
 
 5
 A Customs Service dog handler, Lisa Johnson, and her dog searched the vehicle for narcotics. The dog "alerted" on the car dashboard, as evidenced by the shaking of his whole body, but Johnson did not find any narcotics. Johnson testified that when no narcotics were found after an "alert," it meant a residual odor existed from narcotics that had been removed. During the search, Johnson found a key imprinted with the number 875 to what she thought was a bus station or airport locker.
 
 
 6
 Agent Halcon, upon learning of the dog's alert and the discovery of the key, ordered a customs agent to go to the Greyhound bus station directly across the street to determine whether there was a locker with the number 875. The agent informed Halcon that such a locker number did exist and the key was not there, indicating that someone had stored something inside it.
 
 
 7
 At approximately 9:15 p.m., Agent Halcon interviewed Beltran-Lemus in a holding area approximately 8 by 10 feet in size. Customs Inspector Luz Carrerra, in uniform and wearing a holstered weapon, also was present during the interview. Halcon asked Beltran-Lemus whether she had a locker at the bus station. She answered that she did and had gotten it that day. Halcon asked Beltran-Lemus what was in the locker, and she said a few bags of things. Upon Halcon's request, Beltran-Lemus consented to his search of the locker. In the locker, Halcon found a baby powder container with approximately 360 grams of heroin inside.
 
 
 8
 At approximately 10:25 p.m., Agent Halcon returned to Beltran-Lemus in the holding area and informed her of her Miranda rights.
 
 II
 Motion to Suppress
 A. Detention
 
 9
 Beltran-Lemus contends that because her detention at the border was illegal, her consent to the search of the bus station locker was invalid and the seized evidence should have been suppressed. This argument lacks merit.
 
 
 10
 We review de novo whether detention at a permanent immigration checkpoint violates an individual's Fourth Amendment rights. United States v. Koshnevis, 979 F.2d 691, 693 (9th Cir.1992).
 
 
 11
 Routine border searches and detentions do not need to be based on reasonable suspicion. United States v. Sandoval-Vargas, 854 F.2d 1132, 1134 (9th Cir.1988), cert. denied, 488 U.S. 912 (1988). Nonetheless, where affirmative evidence indicates that referral to secondary inspection is for investigation of drug-related offenses and not for immigration-related offenses, reasonable suspicion must exist to justify the detention. Cf. Koshnevis, 979 F.2d at 693-94; see also United States v. Barnett, 935 F.2d 178, 181 (9th Cir.1991). We consider the totality of circumstances when determining the existence of reasonable suspicion. United States v. Oba, 978 F.2d 1123, 1128 (9th Cir.1992). If a detention is illegal, a subsequent consent to search is tainted and the evidence seized must be suppressed. Florida v. Royer, 460 U.S. 491, 507-08 (1983); United States v. Morales, 972 F.2d 1007, 1010 (9th Cir.1992), cert. denied, 113 S.Ct. 1665 (1993).
 
 
 12
 At the motion to suppress hearing, Beltran-Lemus argued that her detention was not part of a routine customs search due to the investigation of the bus station locker across the street. We need not address this point, however, because the record clearly shows that the subjective purpose of the customs agents was to refer Beltran-Lemus to secondary inspection for investigation of drug-related offenses. Cf. Koshnevis, 979 F.2d at 694; Barnett, 935 F.2d at 181. Accordingly, the detention had to be based on the "reasonable suspicion" standard of Terry v. Ohio, 392 U.S. 1 (1968).
 
 
 13
 Here, a reliable informant had stated that a red vehicle bearing a certain license plate number might be used to transport heroin into the United States and that a woman named Beltran would be driving the vehicle and be accompanied with three children. Based on a totality of circumstances, reasonable suspicion existed to detain Beltran-Lemus and to suspect that she was engaged in the smuggling of contraband. See Oba, 978 F.2d at 1128. Accordingly, Beltran-Lemus' consent to the search of the locker was not made invalid by an improper detention.[1] Cf. Royer, 460 U.S. at 507-08.
 
 
 14
 We note that the district court found that the detention constituted a routine border search. While we disagree with this characterization, we nonetheless affirm on the basis that reasonable suspicion existed to justify Beltran-Lemus' detention. See United States v. Elgersma, 979 F.2d 750, 752 (9th Cir.1992) (reviewing court may affirm on any ground that is supported by the record).
 
 B. Miranda
 
 15
 Beltran-Lemus contends in the alternative that the evidence should have been suppressed because Agent Halcon improperly questioned her about the locker prior to advising her of her constitutional rights pursuant to Miranda v. Arizona, 384 F.2d 436 (1966). This argument also lacks merit.
 
 
 16
 We review de novo whether probable cause existed to justify an arrest and for clear error the district court's underlying factual findings. United States v. Greene, 783 F.2d 1364, 1367 (9th Cir.), cert. denied, 476 U.S. 1185 (1986).
 
 
 17
 In a border-crossing situation, Miranda warnings need not be given unless and until the questioning agent has probable cause to believe that the traveler committed an offense and the traveler reasonably believes that she is not free to leave. United States v. Estrada-Lucas, 651 F.2d 1261, 1265 (9th Cir.1980). Probable cause exists where facts and circumstances within an agent's knowledge are sufficient to warrant a prudent person to suspect that an offense has been committed. Greene, 783 F.2d at 1367 (9th Cir.1986).
 
 
 18
 Here, prior to the initial interview with Beltran-Lemus, Halcon only knew that Beltran and her vehicle fit the informant's description of someone who might be smuggling heroin, that the dog alerted in the dashboard area of the vehicle, that what appeared to be a locker key was found in the vehicle, and that a locker in the Greyhound bus station across the street matched the number of the key. No contraband had been found at this time. Based on these circumstances, no probable cause yet existed to indicate that Beltran-Lemus had committed an offense. See, e.g., id. Accordingly, Halcon was not required to advise Beltran-Lemus of her Miranda rights before questioning her about the bus station locker, and the evidence obtained as a result of the interview need not have been suppressed. See Estrada-Lucas, 651 F.2d at 1265.[2]
 
 
 19
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Beltran-Lemus does not challenge the district court's factual finding that she voluntarily consented to the search of the locker
 
 
 [2]
 Because there was no probable cause to arrest, we need not address the issue of custody
 FNBFN