53 F.3d 340
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Rudolph HOWELL, Jr., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Angel Cesar OGANDO, Defendant-Appellant.
 Nos. 93-50106, 93-50171.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 3, 1994.
Decided April 26, 1995.
 
 1
 Before: D.W. NELSON, NORRIS, and BOGGS,* Circuit Judges.
 
 
 2
 MEMORANDUM**
 
 
 3
 After a jury trial, Howell was found guilty on five counts; (1) conspiracy to manufacture, possess with intent to distribute, and distribute methamphetamine, in violation of 21 U.S.C. Sec. 846; (2) distribution of 884 grams of methamphetamine, in violation of 21 U.S.C. Sec. 841 (a)(1); (3) distribution of 3,445 grams of methamphetamine, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2(a); (4) possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. Sec. 924(c) and (d); and (5) aiding and abetting the manufacture of methamphetamine, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2(a). Ogando was found guilty on Counts 1, 3, and 5. Howell was sentenced to 295 months, Ogando was sentenced to 120 months. On appeal, we affirm the convictions of both Howell and Ogando.
 
 
 4
 * On appeal, Howell argues that the trial court's refusal to allow him to call confidential informant Sherrod as a witness violated the Confrontation Clause. Howell's counsel initially sought to call Sherrod as a witness, in order to demonstrate that Howell had been entrapped. The court never ruled on this issue, because Howell's counsel withdrew the request to call Sherrod as a witness. An issue not presented before the trial court is usually not reviewable on appeal. United States v. Childs, 944 F.2d 491, 495 (9th Cir. 1991); United States v. Barnett, 935 F.2d 178, 180 (9th Cir. 1991). Here, the trial court made no legal determination for this court to rule upon.
 
 
 5
 In his reply brief, Howell argues that the court refused to allow Howell's counsel to call Officer David Marzullo, who apparently would impeach Sherrod's credibility. The court ruled that this was not relevant to Howell's entrapment defense. We need not address this issue because Howell raises this particular point for the first time in his reply brief, thereby not providing the government with notice to brief the issue. See All Pacific Trading Inc. v. Vessel M/V Hanjin Yosu, 7 F.3d 1427, 1434 (9th Cir. 1993), cert. denied, 114 S. Ct. 1301 (1994). Furthermore, this evidence appears to be relevant only to show Sherrod's credibility or veracity, not Howell's entrapment. As discussed, Howell's counsel waived his request to call Sherrod as a witness. The court was well within its discretion to bar this testimony.
 
 II
 
 6
 Howell also argues that the court's instruction No. 29.5 failed to instruct the jury properly on the issue of entrapment. Before trial, Howell offered an instruction on the entrapment issue. It read:
 
 
 7
 A person is entrapped when the person has no previous intention to violate the law and is persuaded to commit a crime by government agents. On the other hand, where a person is already willing to commit a crime, it is not entrapment if government agents merely provide an opportunity to commit the crime.
 
 
 8
 The court adopted this instruction entirely, adding another two sentences:
 
 
 9
 The government has the burden of proving beyond a reasonable doubt that no entrapment took place. If it does not do so, the jury should acquit defendant Howell as to any charged crimes that he was entrapped into committing.
 
 
 10
 Howell's counsel did not object to the modification.
 
 
 11
 Howell argues that this instruction falls short of the requirement in United States v. Dearmore, 672 F.2d 738 (9th Cir. 1982), that an entrapment instruction should tell the jury that the government "must prove beyond a reasonable doubt that the defendant was ready and willing to commit the crimes whenever an opportunity was afforded." Id. at 740-41.
 
 
 12
 In Dearmore, this court held that a trial court must instruct the jury that, once entrapment is raised as an issue, the government must show beyond a reasonable doubt that no entrapment took place. Dearmore thus requires the language that the trial court added. Howell may prefer in retrospect the "whenever an opportunity was afforded" language. However, that language is not required under current entrapment case law, see Jacobson v. United States, 112 S. Ct. 1535 (1992), nor was it a part of Howell's initial instruction request.
 
 
 13
 This instruction would appear to meet the requirements of Jacobson, which requires that the government must prove beyond a reasonable doubt that the defendant was disposed to commit the criminal act before being contacted by the government. Id. at 1540 & n.1. In the present case, the language added by the court to Howell's proposed jury instruction mirrors the language of the instruction in Jacobson, and thus fulfills this requirement.
 
 
 14
 The portion of the instruction Howell objects to is the portion he offered to the court. This court has held that, when the defendant proposes the challenged jury instruction, we may "deny review under the invited error doctrine." United States v. Baldwin, 987 F.2d 1432, 1437 (9th Cir. 1993), cert. denied 113 S. Ct. 2948 (1993); United States v. Guthrie, 931 F.2d 564, 567 (9th Cir. 1991). We find that the instruction meets the requirements of Jacobson, but we note that if the instruction had been error, it would have been an invited error.
 
 III
 
 15
 Howell asserts that the court failed to make the required finding of the existence of a conspiracy, so that Detective Villanueva could testify about statements that Sherrod (the confidential informant) had made regarding Howell. Bourjaily v. United States, 483 U.S. 171 (1987). In Bourjaily, the Supreme Court held that the government must prove the existence of a conspiracy by a preponderance of the evidence in order to offer a hearsay statement by a co-conspirator under the co-conspirator exception to the hearsay rule. Id. at 175. The Supreme Court held that the co-conspirator's out-of-court statements could be used to meet this standard of proof. Id. at 180. Howell argues that the court did not determine that the prosecution had shown the existence of a conspiracy by a preponderance of the evidence. Therefore, Howell argues that the court should not have allowed Villanueva to testify to Sherrod's out of court statements about Howell. Howell did not object to Villanueva's testimony at trial. Thus, review is for plain error. United States v. Olano, 113 S. Ct. 1770, 1776 (1993).
 
 
 16
 The government argues that Sherrod's testimony is not hearsay, citing United States v. Echeverry, 759 F.2d 1451, 1456-57 (9th Cir. 1985), but rather only necessary background information under Fed. R. Evid. 801(c). In Echeverry, we held that an undercover police officer's testimony about out-of-court statements made by a co-conspirator were admissible, because they provided necessary background information. We noted that their probative value was independent of their veracity. Id. at 1457.
 
 
 17
 Even if the court did not make an explicit finding of a conspiracy, there is ample evidence in the record that Howell was involved in a conspiracy, especially considering Sherrod's statement, as Bourjaily permits. Therefore, the admission of Villanueva's testimony conveying Sherrod's out-of-court statement is not plain error under the hearsay exception for statements by co-conspirators.
 
 IV
 
 18
 Section 3553(c)(1) of Title 18 requires the sentencing court to explain its imposition of a sentence when the guideline range exceeds 24 months. Howell claims that the court failed to state properly the reasons for its imposition of his sentence, by not assessing the factors of character, background, and goals as required by Sec. 3553(c)(1); see also United States v. Gardner, 988 F.2d 82, 85 (9th Cir. 1993). However, Howell received the lowest sentence available in his range and could not have been prejudiced by any oversight. Furthermore, the court did consider the relevant factors, by discussing the fact that Howell had no criminal history. This was the reason for Howell's low sentence. See Gardner, 988 F.2d at 85.
 
 V
 
 19
 Howell claims that he should have received a reduction of two levels for accepting responsibility for his crime. USSG Sec. 3E1.1. A sentencing judge's finding that a defendant has not accepted responsibility for his crime is entitled to "great deference on review" and will not be disturbed unless it is without foundation. USSG Sec. 3E1.1, comment. (n.5); United States v. Molina, 934 F.2d 1440, 1450 (9th Cir. 1991) (standard of review is "clearly erroneous"); United States v. Goodrich, 919 F.2d 1365, 1369 (9th Cir. 1990). We hold that the district court properly exercised its discretion in denying Howell a two-level reduction for acceptance of responsibility.
 
 VI
 
 20
 Ogando argues that the government presented insufficient evidence to convict him of conspiracy in Count 1, and aiding and abetting in Counts 3 and 5. We review the question of insufficient evidence by assessing whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Vasquez-Chan, 978 F.2d 546, 549 (9th Cir. 1992); United States v. Sharif, 817 F.2d 1375, 1377 (9th Cir. 1987). Ogando argues that the government must show that he had the intent to help those involved in the crime, but it failed to produce evidence on that element. Vasquez-Chan, 978 F.2d at 552.
 
 
 21
 The trial evidence demonstrated that Ogando worked closely with Howell during critical parts of the conspiracy. At the second meeting between Detective Villanueva and Howell on July 8, at which Howell had agreed to trade ephedrine for methamphetamine, Howell met Villanueva, then left Villanueva waiting as he went to a house where he met Robert Alves[1] and Angel Cesar Ogando.[2] Alves gave Howell a gift-wrapped package, while, according to surveilling police, Ogando acted as a lookout. According to Alves, the package was placed in the trunk of an Audi that Alves had driven to the house, and Alves and Ogando drove in the Audi to a restaurant while Howell drove Alves's pickup truck. Police testified that Howell removed the package from the Audi, placed it in the truck, and left Alves and Ogando at the restaurant.
 
 
 22
 Howell returned to Villanueva and gave Villanueva the package. According to Villanueva, Howell said that it contained the eight pounds of methamphetamine, as promised in a prior meeting. Villanueva testified that he noticed that the package had a chemical smell associated with methamphetamine, and saw plastic bags with a substance that looked like methamphetamine inside. Villanueva testified that Howell loaded two five-gallon buckets of ephedrine provided by Villanueva into the truck, and surveilling police saw Howell return to the restaurant where Alves and Ogando were waiting.
 
 
 23
 Police witnesses testified that three days later, on July 11, Howell and Ogando were observed opening the garage, looking inside for a few moments, then leaving. Police then observed Howell and Ogando running a variety of errands, including purchasing another bucket and large plastic trash bags from Home Depot. They were both wearing pagers. Surveilling police testified that Ogando and Howell returned to the garage at the apartment complex, where they entered the garage, and placed plastic bags on the floor and in the new bucket. Police observed four five-gallon buckets resembling the buckets provided by Villanueva in the corner of the garage. Ogando was observed by police standing on one of the buckets to extend a power cord from the front of the garage to the back through the garage's rafters. Ogando then locked Howell in the garage and left for about 10 minutes. On Ogando's return, he backed his Cadillac into the garage, and Howell and Ogando were observed loading something into the Cadillac, then driving across the street to a ministorage facility. When they pulled away, surveilling police testified that they could no longer see buckets in the garage.
 
 
 24
 Howell and Ogando then drove to numerous places, including a local mall. Police concluded that they suspected they were under surveillance because they drove in a countersurveillance manner (although officers could not identify whether Howell or Ogando was driving). Howell and Ogando then went to a public underground parking garage near a bank. After Howell and Ogando left the parking garage, police discovered three buckets stashed in the garage, including a bucket containing ephedrine.
 
 
 25
 We hold that Howell and Ogando's close association in a variety of suspicious activities over several days could lead a rational trier of fact to conclude, based on the circumstances, that Ogando was guilty of conspiracy and of aiding and abetting. Circumstantial evidence can support convictions for both aiding and abetting, and for conspiracy. United States v. Castro, 972 F.2d 1107, 1110 (9th Cir. 1992), cert. denied, 113 S. Ct. 1350 (1993).
 
 
 26
 In comparing Ogando's conviction to cases in which this court had found insufficient evidence of conspiracy, we note that Ogando's participation is more consistent and involved a longer period of time than did the defendants' participation in these other cases. See United States v. Wiseman, 25 F.3d 862 (9th Cir. 1994); United States v. Ramos-Rascon, 8 F.3d 704 (9th Cir. 1993); United States v. Bautista-Avila, 6 F.3d 1360 (9th Cir. 1993). For example, in Wiseman, we noted that the only evidence that linked Wiseman to the drug conspiracy was that he had on one occasion driven a car in which marijuana had been stashed, and that he had asked DEA agents after being taken into custody whether marijuana was found at a friend's house. Wiseman, 25 F.3d at 865. We found that this evidence was insufficient to convict Wiseman of conspiracy. Ibid. In Ramos-Rascon, we noted that defendants' alleged acts of countersurveillance did not meet the government's burden to prove beyond a reasonable doubt that they were engaged in wrongdoing rather than innocent behavior. Ramos-Rascon, 8 F.3d at 710. In cases where we have found insufficient evidence, the defendants' actions have been as readily viewed as innocent acts of association as culpable acts that show intent to further a drug conspiracy.
 
 
 27
 This case presents us with stronger evidence. Here, Ogando's participation, with Howell, in these numerous errands and specific chores is not easily explained away as activity in which an innocent associate would participate. Ogando was also involved twice in countersurveillance activity, and helped carry chemicals for Howell. We therefore hold that a rational jury, provided this evidence, could find Ogando guilty beyond a reasonable doubt of conspiracy and aiding and abetting.
 
 VII
 
 28
 Ogando states that the court erroneously believed it could not independently assess the credibility of witnesses in its consideration of Ogando's motion for a new trial under Fed. R. Crim. P. 33. Ogando argues that the government's evidence was inconsistent and unreliable.
 
 
 29
 After Ogando's counsel's request for a new trial, the court said:
 
 
 30
 Maybe we're not coming at this from the same angle. On a Rule 29 motion [motion for judgment of acquittal], I would have to find that the evidence was insufficient to support a conviction. On a motion for a new trial, I would have to find that the evidence was so weak that the jury's verdict, in effect, was a miscarriage of justice, even though based on some evidence. What I'm suggesting to you, that I can't make either finding on these facts.
 
 
 31
 The record demonstrates that the judge below clearly understood the standard by which he should assess a motion for a new trial. See United States v. Alston, 974 F.2d 1206, 1211-12 (9th Cir. 1992) ("If the court concludes .. the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict [and] grant a new trial ....) (quoting United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980)). His decision to deny this motion is reviewed for abuse of discretion. Alston, 974 F.2d at 1212.
 
 
 32
 On the facts produced in this case, this court finds that the court below did not abuse its discretion by denying Ogando's motion for a new trial.
 
 VIII
 
 33
 Ogando argues that the prosecution misstated the evidence and vouched for witnesses in its closing argument. In closing, the government asserted that Ogando was present with Howell on July 8 and wrapped up the methamphetamine. The assertion that Ogando wrapped the package was not supported by the record. On Ogando's counsel's objection, the court cautioned the jury to "[r]emember, the lawyers are not stating evidence but making an argument here."
 
 
 34
 Ogando also argues that the prosecution improperly vouched for a witness, Alves, in its closing argument. The prosecutor stated in closing:
 
 
 35
 Now let's talk a little bit about Robert Alves. You learned that Robert Alves did not come here and testify voluntarily. He came because he had to because he was subpoenaed. And, ladies and gentlemen, he told you he was very nervous, and he certainly appeared very scared. But he came here and told the truth. In fact, he told you repeatedly that he was not going to lie. When he talked to his lawyer, his lawyer said just go ahead and tell the truth. And, ladies and gentlemen, you also learned that he was released from this case because there was insufficiency of the evidence. You learned that there was no cooperation agreement whatsoever ...."
 
 
 36
 Alves testified, however, that he did not know why he had been released, but that he was released after giving a statement in this matter.
 
 
 37
 A district court ruling permitting a prosecutorial argument is reviewed for abuse of discretion. United States v. Foppe, 993 F.2d 1444, 1450 (9th Cir.), cert. denied, 114 S. Ct. 615 (1993). When the defendant fails to object to vouching, the standard of review is plain error. United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir. 1993); United States v. Molina, 934 F.2d 1440, 1444 (9th Cir. 1991).
 
 
 38
 Ogando objected to the prosecutor's remarks that asserted he had been at Howell's residence when the methamphetamine was wrapped for delivery to Villanueva, and had assisted Howell in wrapping the package. In response, the court admonished the jury not to use this argument as evidence. Ogando would prefer that the court had placed greater emphasis on the fact that this observation was not supported by the evidence. The court's reaction might have been more specific, but it still informed the jurors that they were not to use what they had just heard in determining Ogando's guilt. We presume that the jury followed the court's instructions. United States v. Olano, 113 S. Ct. 1770, 1781 (1993).
 
 
 39
 The prosecution, without objection, argued in closing that Alves "came here and told the truth." We find that this is improper prosecutorial vouching. However, Ogando failed to object, and so our review must be for plain error. This brief assertion, albeit improper, in context did not affect the jury's verdict. Foppe, 993 F.2d at 1450. The district court's decision to allow the statement and then admonish the jury about using this portion of the prosecution's closing argument was therefore not erroneous under this standard. However, prosecutors must remain mindful of their special status as representatives of the government, and provide defendants with sound trials free of improper argument.
 
 
 40
 In conclusion, we reject all of Howell's arguments on appeal. We also reject Ogando's arguments on appeal. However we caution the district courts to monitor carefully instances of vouching and take appropriate actions. We admonish prosecutors to remember their special duty as public servants, and to refrain from such potentially prejudicial conduct.
 
 
 41
 AFFIRMED.
 
 
 
 *
 The Honorable Danny J. Boggs, United States Court of Appeals for the Sixth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Alves testified he had been a heavy user of methamphetamine. The court and counsel observed at sidebar that Alves appeared to be "under the influence" in court. The prosecutor explained that Alves was nervous
 Alves and Howell had been roommates. When Alves moved out, Ogando wrote a rent check to cover Alves's portion of the rent. A special agent had been placed in the rental office, heard their conversation, and saw that Ogando check was drawn from a Wells Fargo account.
 Alves testified that he moved out of his apartment with Howell because he had become nervous about "what was going on."
 
 
 [2]
 Ogando testified that he had known Howell for many years, had worked with Howell in construction, and was his employee for a time